## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JASON PERRY<br>1360 Nelson Place<br>Washington Court House, Ohio 43160, | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES**<br>**AND INJUNCTIVE RELIEF** |
| FIRST DIVERSITY STAFFING GROUP,<br>INC.<br>d/b/a Emergent Enterprises, LLC<br>560 East High Street<br>Springfield, Ohio 45505 | )<br>)<br>)<br>)<br>)<br>) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| **Serve Also:**<br>First Diversity Staffing Group, Inc.<br>d/b/a Emergent Enterprises, LLC<br>c/o Ted Gudorf<br>8153 North Main Street<br>Dayton, Ohio 45415 | )<br>)<br>)<br>)<br>)<br>) | |
| Defendant. | )<br>) | |

Plaintiff, Jason Perry, by and through undersigned counsel, as his Complaint against Defendant First Diversity Staffing Group, Inc. d/b/a Emergent Enterprises, LLC ("Emergent"), states and avers the following:

### PARTIES, VENUE, & JURISDICTION

1. Perry is a resident of the city of Washington Court House, Fayette County, Ohio.

2. At all times herein, Perry was acting in the course and scope of his employment.

3. Emergent is a foreign corporation that does business at 1359 Leesburg Avenue, Suite #4, Washington Court House, Fayette County, Ohio 43160 ("Washington Court House Location").

4. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Perry is alleging a Federal Law Claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e.

5. Material events alleged in this Complaint occurred in Fayette County, Ohio.

6. This Court has supplemental jurisdiction over Perry's state law claims pursuant to 28 U.S.C. § 1367 as Perry's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

8. Within 300 days of the conduct alleged below, Perry filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2021-00909 against Emergent ("Perry EEOC Charge").

9. Perry dually filed the Perry EEOC Charge with the EEOC and the Ohio Civil Rights Commission.

10. On or about November 8, 2021, the EEOC issued a Notice of Right to Sue letter to Perry regarding the Charges of Discrimination brought by Perry against Emergent in the Perry EEOC Charge.

11. Perry received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

12. Perry has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

13. Perry has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

14. On or about June 8, 2020, Perry began working for Emergent.

15. Emergent employed Perry as a market manager.

16. Perry initially worked in Emergent's location in Springfield, Ohio.

17. During Perry's employment, Emergent opened a new office in Washington Court House, Ohio.

18. After the Washington Court House Location opened, Perry worked at that location.

19. In or about August 2020, an employee at Emergent, Ellisa Stone, repeatedly asked Perry to call her on her cell phone after work hours to discuss non-work matters ("Stone's Suggestive Statements").

20. Stone is female.

21. Perry is male.

22. Perry reasonably interpreted Stone's Suggestive Statements as sexual advances.

23. Stone's Suggestive Statements were unwelcome to Perry.

24. In or about August 2020, Perry told Stone that Stone's Suggestive Statements were unwelcome.

25. Despite Perry's telling Stone that her advances were unwelcome, Stone's Suggestive Statements continued.

26. In or about August 2020, Perry reported Stone's Suggestive Statements to Bruce Smith.

27. Smith was executive vice president for Emergent.

28. Emergent has a policy against sexual harassment ("Sexual Harassment Policy").

29. Emergent's Sexual Harassment Policy precludes retaliation against employees who complain about sexual harassment.

30. Alternatively, retaliation against employees who complain about sexual harassment is permitted by Emergent.

31. Emergent's Sexual Harassment Policy precludes intimidation against employees who complain about sexual harassment.

32. Alternatively, intimidation against employees who complain about sexual harassment is permitted by Emergent.

33. Emergent's Sexual Harassment Policy requires employees to report what they reasonably believe is a violation of the Sexual Harassment Policy.

34. Emergent's Sexual Harassment Policy precludes retaliation against employees who report a violation of the Sexual Harassment Policy.

35. Alternatively, retaliation against employees who report a violation of the Sexual Harassment Policy is permitted by Emergent.

36. Emergent's Sexual Harassment Policy precludes intimidation against employees who report a violation of the Sexual Harassment Policy.

37. Alternatively, intimidation against employees who report a violation of the Sexual Harassment Policy is permitted by Emergent.

38. Stone's Suggestive Statements violate the Sexual Harassment Policy.

39. Emergent has a policy to investigate reports of unsafe conditions.

40. Emergent has a policy to investigate reports of violations of its Sexual Harassment Policy.

41. An investigation should include interviewing the complainant.

42. An investigation should include interviewing the subject of the complaint.

43. An investigation should include interviewing the subject of the reported discrimination.

44. An investigation should include interviewing witnesses to the reported discrimination.

45. An investigation should include getting a written statement from the complainant.

46. An investigation should include getting a written statement from the subject of the complaint.

47. An investigation should include getting a written statement from the subject of the reported discrimination.

48. In response to Perry's report of Stone's Suggestive Statements, Emergent did not interview Perry.

49. In response to Perry's report of Stone's Suggestive Statements, Emergent did not interview Stone.

50. In response to Perry's report of Stone's Suggestive Statements, Emergent did not interview witnesses.

51. In response to Perry's report of Stone's Suggestive Statements, Emergent did not get a written statement from Perry.

52. In response to Perry's report of Stone's Suggestive Statements, Emergent did not get a written statement from Stone.

53. In response to Perry's report of Stone's Suggestive Statements, Emergent did not get a written statement from witnesses.

54. Emergent did not investigate Perry's report of Stone's Suggestive Statements.

55. Emergent investigates female employees' reports of sexual harassment.

56. Emergent failed to investigate Perry's report of Stone's Suggestive Statements because of his gender.

57. Emergent did not give Stone a verbal warning because of Stone's Suggestive Statements.

58. Emergent did not give Stone a written warning because of Stone's Suggestive Statements.

59. Emergent did not give Stone a final warning because of Stone's Suggestive Statements.

60. Emergent did not give Stone a suspension because of Stone's Suggestive Statements.

61. Emergent did not give Stone a demotion because of Stone's Suggestive Statements.

62. Emergent did not terminate Stone's employment because of Stone's Suggestive Statements.

63. Emergent did not discipline Stone at all as a result of Stone's Suggestive Statements.

64. A common sexist stereotype is that men are not victims of sexual harassment.

65. A common sexist stereotype is that men who report sexual harassment are insufficiently masculine.

66. In or about late August or early September 2020, Mia Perez and Carmen Moore, two female employees at Emergent, went out drinking and then called Perry late at night while under the influence ("Crass Call").

67. Perez was a manager of special teams for Emergent.

68. Perez is female.

69. Moore was a recruiter for Emergent.

70. Moore is female.

71. The Crass Call was not related to work.

72. Perez and Moore were flirtatious in the Crass Call.

73. In the Crass Call, Perez and Moore asked Perry to meet them outside work.

74. Perry reasonably interpreted the Crass Call as a sexual advance.

75. The Crass Call was unwelcome to Perry.

76. Perry told Perez and Moore that the Crass Call was unwelcome.

77. On or about September 16, 2020, Perry reported the Crass Call to Smith.

78. In response to Perry's report of the Crass Call, Emergent did not interview Perry.

79. In response to Perry's report of the Crass Call, Emergent did not interview Perez.

80. In response to Perry's report of the Crass Call, Emergent did not interview Moore.

81. In response to Perry's report of the Crass Call, Emergent did not interview witnesses.

82. In response to Perry's report of the Crass Call, Emergent did not get a written statement from Perry.

83. In response to Perry's report of the Crass Call, Emergent did not get a written statement from Perez.

84. In response to Perry's report of the Crass Call, Emergent did not get a written statement from Moore.

85. In response to Perry's report of the Crass Call, Emergent did not get a written statement from witnesses.

86. Emergent did not investigate Perry's report of the Crass Call.

87. Emergent investigates female employees' reports of sexual harassment.

88. Emergent failed to investigate Perry's report of the Crass Call because of his gender.

89. Emergent did not give Perez a verbal warning because of the Crass Call.

90. Emergent did not give Perez a written warning because of the Crass Call.

91. Emergent did not give Perez a final warning because of the Crass Call.

92. Emergent did not give Perez a suspension because of the Crass Call.

93. Emergent did not give Perez a demotion because of the Crass Call.

94. Emergent did not terminate Perez's employment because of the Crass Call.

95. Emergent did not discipline Perez at all as a result of the Crass Call.

96. Emergent did not give Moore a verbal warning because of the Crass Call.

97. Emergent did not give Moore a written warning because of the Crass Call.

98. Emergent did not give Moore a final warning because of the Crass Call.

99. Emergent did not give Moore a suspension because of the Crass Call.

100. Emergent did not give Moore a demotion because of the Crass Call.

101. Emergent did not terminate Moore's employment because of the Crass Call.

102. Emergent did not discipline Moore at all as a result of the Crass Call.

103. In or about September 2020, Perry reported Stone's Suggestive Statements and the Crass Call to Sierra Pla.

104. Pla was human resources manager for Emergent.

105. On or about September 27, 2020, Perry told George Ten about Stone's Suggestive Statements and the Crass Call ("Reiterated Report").

106. Ten is the owner of Emergent.

107. In the Reiterated Report, Perry opposed sexual harassment.

108. In response to the Reiterated Report, Ten replied, "You have to go along to get along."

109. In response to Perry's Reiterated Report, Emergent did not interview Perry.

110. In response to Perry's Reiterated Report, Emergent did not interview Stone.

111. In response to Perry's Reiterated Report, Emergent did not interview Perez.

112. In response to Perry's Reiterated Report, Emergent did not interview Moore.

113. In response to Perry's Reiterated Report, Emergent did not interview witnesses.

114. In response to Perry's Reiterated Report, Emergent did not get a written statement from Perry.

115. In response to Perry's Reiterated Report, Emergent did not get a written statement from Stone.

116. In response to Perry's Reiterated Report, Emergent did not get a written statement from Perez.

117. In response to Perry's Reiterated Report, Emergent did not get a written statement from Moore.

118. In response to Perry's Reiterated Report, Emergent did not get a written statement from witnesses.

119. Emergent did not investigate Perry's Reiterated Report.

120. Emergent investigates female employees' reports of sexual harassment.

121. Emergent failed to investigate Perry's Reiterated Report because of his gender.

122. Emergent did not give Stone a verbal warning because of Stone's Suggestive Statements.

123. Emergent did not give Stone a written warning because of Stone's Suggestive Statements.

124. Emergent did not give Stone a final warning because of Stone's Suggestive Statements.

125. Emergent did not give Stone a suspension because of Stone's Suggestive Statements.

126. Emergent did not give Stone a demotion because of Stone's Suggestive Statements.

127. Emergent did not terminate Stone's employment because of Stone's Suggestive Statements.

128. Emergent did not discipline Stone at all as a result of Stone's Suggestive Statements.

129. Emergent did not give Perez a verbal warning because of the Crass Call.

130. Emergent did not give Perez a written warning because of the Crass Call.

131. Emergent did not give Perez a final warning because of the Crass Call.

132. Emergent did not give Perez a suspension because of the Crass Call.

133. Emergent did not give Perez a demotion because of the Crass Call.

134. Emergent did not terminate Perez's employment because of the Crass Call.

135. Emergent did not discipline Perez at all as a result of the Crass Call.

136. Emergent did not give Moore a verbal warning because of the Crass Call.

137. Emergent did not give Moore a written warning because of the Crass Call.

138. Emergent did not give Moore a final warning because of the Crass Call.

139. Emergent did not give Moore a suspension because of the Crass Call.

140. Emergent did not give Moore a demotion because of the Crass Call.

141. Emergent did not terminate Moore's employment because of the Crass Call.

142. Emergent did not discipline Moore at all as a result of the Crass Call.

143. In response to the Reiterated Report, Ten told Perry that there would be an investigation against Perry if he kept making reports of harassment.

144. In or about early October 2020, Perez and Moore began spreading rumors that Perry was racist and was having affairs with employees.

145. On or about October 6, 2020, Perry held a meeting with the employees in the Washington Court House Location, to address the rumors being spread by Perez and Moore.

146. On or about October 6, 2020, Perry reported to Smith, Jay Miller, and Rachel Abriola that he held a meeting with the employees in the Washington Court House Location, to address the rumors being spread by Perez and Moore.

147. Miller was operations manager for Emergent.

148. Abriola worked in Emergent's human resources department.

149. On or about November 6, 2020, Moore reported to Emergent's human resources department that Perry was dating an employee, Joni Combs, and was physically abusive toward her ("Retaliatory Report").

150. Combs was a receptionist and recruiter for Emergent.

151. Combs is female.

152. Perry was not dating Combs.

153. Perry was not physically abusive toward Combs.

154. Moore made the Retaliatory Report in retaliation for the reports Perry made against Moore.

155. In the Retaliatory Report, Moore reported that Combs was hospitalized due to injuries inflicted by Perry.

156. Combs was never hospitalized due to injuries inflicted by Perry.

157. The Retaliatory Report was false.

158. Moore has a history of making false reports to Emergent.

159. In response to the Retaliatory Report, Emergent interviewed Moore.

160. In response to the Retaliatory Report, Emergent interviewed Combs.

161. In Emergent's interview with Combs, Combs denied the allegations Moore made in the Retaliatory Report.

162. In Emergent's interview with Combs, Combs told Emergent that Combs and Perry were not dating.

163. In Emergent's interview with Combs, Combs told Emergent that Perry was never abusive toward her.

164. Miller and Pla presented Combs with a statement that they asked her to sign ("Pre-Printed Pronouncement").

165. The Pre-Printed Pronouncement accused Perry of dating Combs.

166. The Pre-Printed Pronouncement accused Perry of abusing Combs.

167. Combs refused to sign the Pre-Printed Pronouncement.

168. Combs told Miller and Pla that the Pre-Printed Pronouncement was false.

169. Emergent pressured Combs to sign the Pre-Printed Pronouncement in retaliation for his reporting sexual harassment.

170. Emergent pressured Combs to sign the Pre-Printed Pronouncement because of Perry's gender.

171. Emergent investigates reports against male employees but not reports made by male employees.

172. On or about November 13, 2020, Emergent terminated Perry's employment ("Termination").

173. The Termination was an adverse employment action.

174. The Termination was an adverse action.

175. On or about November 13, 2020, Smith, Miller, and Ten informed Perry about the Termination.

176. At the time of Perry's Termination, Emergent knew that Combs denied the claims Moore made against Perry.

177. Emergent has a progressive disciplinary policy ("Discipline Policy").

178. A verbal warning is the lowest level of discipline in the Discipline Policy.

179. Perry did not receive a verbal warning before the Termination.

180. A written warning is a higher level of discipline than a verbal warning in the Discipline Policy.

181. Perry did not receive a written warning before the Termination.

182. A termination is the highest level of discipline in the Discipline Policy.

183. Emergent knowingly skipped progressive disciplinary steps in terminating Perry.

184. Emergent knowingly terminated Perry's employment.

185. Emergent knowingly took an adverse employment action against Perry.

186. Emergent knowingly took an adverse action against Perry.

187. Emergent intentionally skipped progressive disciplinary steps in terminating Perry.

188. Emergent intentionally terminated Perry's employment.

189. Emergent intentionally took an adverse employment action against Perry.

190. Emergent intentionally took an adverse action against Perry.

191. Emergent knew that skipping progressive disciplinary steps in terminating Perry would cause Perry harm, including economic harm.

192. Emergent knew that terminating Perry would cause Perry harm, including economic harm.

193. Emergent willfully skipped progressive disciplinary steps in terminating Perry.

194. Emergent willfully terminated Perry's employment.

195. Emergent willfully took an adverse employment action against Perry.

196. Emergent willfully took an adverse action against Perry.

197. On or about November 13, 2020, Emergent terminated Perry's employment because of his gender.

198. On or about November 13, 2020, Emergent terminated Perry's employment in retaliation for his reports of sexual harassment.

199. As a direct and proximate result of Emergent's conduct, Perry suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT I: GENDER DISCRIMINATION IN VIOLATION OF TITLE VII

200. Perry restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

201. Emergent treated Perry differently than other similarly-situated employees based on his gender.

202. Emergent discriminated against Perry on the basis of his gender throughout his employment with the company.

203. Emergent terminated Perry's employment without just cause.

204. Emergent terminated Perry's employment based on his gender.

205. Emergent's discrimination against Perry based on his gender violates Title VII.

206. As a direct and proximate result of Emergent's conduct, Perry suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT II: GENDER DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

207. Perry restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

208. Emergent treated Perry differently than other similarly-situated employees based on his gender.

209. Emergent discriminated against Perry on the basis of his gender throughout his employment with the company.

210. Emergent terminated Perry's employment without just cause.

211. Emergent terminated Perry's employment based on his gender.

212. Emergent's discrimination against Perry based on his gender violates R.C. § 4112.01 *et seq.*

213. As a direct and proximate result of Emergent's conduct, Perry suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT III: RETALIATION IN VIOLATION OF TITLE VII

214. Perry restates each and every prior paragraph of this complaint, as if it were fully restated herein.

215. As a result of Emergent's discriminatory conduct described above, Perry complained about the sexual harassment he was experiencing.

216. Emergent took no action to remedy the harassment Perry was experiencing.

217. Subsequent to Perry's reporting of sexual harassment, Ten told Perry that Perry would be investigated if he kept complaining about harassment.

218. Subsequent to Perry's reporting of sexual harassment, Emergent terminated Perry's employment.

219. Emergent's actions were retaliatory in nature based on Perry's opposition to the unlawful discriminatory conduct.

220. Pursuant to Title VII, it is an unlawful discriminatory practice to retaliate against an employee for reporting sexual harassment.

14

221. As a direct and proximate result of Emergent's conduct, Perry suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT IV:  RETALIATION IN VIOLATION OF R.C. § 4112.02(I)

222. Perry restates each and every prior paragraph of this complaint, as if it were fully restated herein.

223. As a result of Emergent's discriminatory conduct described above, Perry complained about the sexual harassment he was experiencing.

224. Emergent took no action to remedy the harassment Perry was experiencing.

225. Subsequent to Perry's reporting of sexual harassment, Ten told Perry that Perry would be investigated if he kept complaining about harassment.

226. Subsequent to Perry's reporting of sexual harassment, Emergent terminated Perry's employment.

227. Emergent's actions were retaliatory in nature based on Perry's opposition to the unlawful discriminatory conduct.

228. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

229. As a direct and proximate result of Emergent's conduct, Perry suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Perry respectfully requests that this Honorable Court grant the following relief:

(a) Issue a permanent injunction:

      (i)      Requiring Emergent to abolish discrimination, harassment, and retaliation;

      (ii)     Requiring allocation of significant funding and trained staff to implement all changes within two years;

      (iii)    Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to investigate complaints promptly and/or take effective action to stop and deter prohibited personnel practices against employees;

      (iv)    Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

      (v)     Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring Emergent to restore Perry to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(c) An award against Defendant of compensatory and monetary damages to compensate Perry for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against Defendant in an amount in excess of $25,000;

(e) An award of reasonable attorneys' fees and non-taxable costs for Perry claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Paul Filippelli (0097085)
**THE SPITZ LAW FIRM, LLC**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (216) 291-4744
Fax:     (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
Email: paul.filippelli@spitzlawfirm.com
*Attorneys for Plaintiff Jason Perry*

## JURY DEMAND

Plaintiff Perry demands a trial by jury by the maximum number of jurors permitted.

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Paul Filippelli (0097085)